UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In Re:                                                    Case No.  18-15236-MAM
                                                          Chapter 11

HOUSE OF FLOORS OF PALM BEACH, INC.

     Debtor.

_____/

## DEBTOR'S PLAN OF REORGANIZATION

Furr Cohen
*Attorneys for the Debtor*
Robert C. Furr, Esq.
2255 Glades Road, Suite 301E
Boca Raton, Florida 33431
(561) 395-0500
(561) 338-7532 fax
rfurr@furrcohen.com

## DEBTOR'S PLAN OF LIQUIDATION

## INTRODUCTION

House of Floors of Palm Beach, Inc., the above captioned Debtor, proposes this Chapter 11 Plan of Reorganization of the Debtor.  The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

## ARTICLE I

## DEFINITIONS AND CONSTRUCTION OF TERMS

A.      **Definitions.**    All capitalized terms in the Plan shall have the meanings ascribed to them herein. Any capitalized term used in the Plan that is not defined herein or elsewhere in the Plan shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

1.1      Administrative Claim means any Claim constituting a cost or expense of administration of the Debtor's Chapter 11 Case under Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a) of the Bankruptcy Code, including, without limitation: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtor's Estate and of operating the business of the Debtor; (ii) any payment to be made under this Plan to cure a default on an executory contract or unexpired lease that is assumed pursuant to Section 365 of the Bankruptcy Code, (iii) any post-Petition Date cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of business, (iv) compensation or reimbursement of expenses of Professionals to the extent allowed by the Bankruptcy Court under Section 330(a) or Section 331 of the Bankruptcy Code, (v) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final

1

Order of the Bankruptcy Court, and (vi) all fees and charges assessed against the Debtor's Estate pursuant to 28 U.S.C. §1930(a).

1.2     "Allow", "Allowed", "Allowance" or words of similar meaning means with respect to a Claim against the estate of the Debtor that is: (a) either (i) scheduled by the Debtor in its Schedules in a liquidated amount and not listed as contingent, unliquidated, zero, underdetermined or disputed; or (ii) asserted in the Case by a proof of a claim that has been timely filed, or deemed timely filed with the Court pursuant to the Bankruptcy Code, the Bankruptcy Rules and/or any applicable orders of the Court, or late filed with leave of Court; and (b) either (i) not objected to within the period fixed by the Bankruptcy Code, the Bankruptcy Rules and/or applicable orders of the Court; or (ii) that has otherwise been allowed by a Final Order or pursuant to this Plan that is no longer subject to appeal or certiorari and as to which no appeal or certiorari is pending. An Allowed Claim includes a previously Disputed Claim to the extent such Disputed Claim becomes Allowed when the context so requires, and shall be net of any valid setoff amount, which amount shall be deemed to have been set off in accordance with the provisions of this Plan.

1.3     "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended, Title 11 of the United States Code, which governs the Chapter 11 case of the Debtor.

1.4     "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Florida having jurisdiction over the Chapter 11 case of the Debtor or the United States District Court for the Southern District of Florida having jurisdiction over any part or all of the Chapter 11 case of the Debtor in respect of which the reference has been withdrawn pursuant to Section 157(d) of Title 28 of the United States Code.

1.5     "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court (including any applicable local rules of the United States

District Court for the Southern District of Florida) as now in effect or hereafter amended.

1.6    "Business Day" means a day other than a Saturday, Sunday or legal holiday.

1.7    "Case" means this chapter 11 case of the Debtor pending before the Court and assigned Case No. 18-15236-MAM.

1.8    "Cash" means legal tender of the United States or its equivalents, including but not limited to bank deposits, checks and other similar items.

1.9     "Claim" shall have the meaning provided for such term in section 101(5) of the Bankruptcy Code.

1.10    "Class" means a group of Claims or Equity Interests described in Article III of this Plan.

1.11    "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

1.12    "Confirmation Order" means a Final Order of the Bankruptcy Court confirming the provisions of this Plan, pursuant to section 1129 of the Bankruptcy Code.

1.13    "Confirmation Hearing" means the hearing at which the Court confirms the Plan.

1.14    "Court" means the United States Bankruptcy Court for the Southern District of Florida, or any other court exercising competent jurisdiction over the Case or any proceeding therein.

1.15    "Debtor" means House of Floors of Palm Beach, Inc., the debtor in possession in this Chapter 11 bankruptcy case currently pending in the United States Bankruptcy Court for the Southern District of Florida, Case No. 18-15236-MAM.

1.16    "Disclosure Statement" means the Disclosure Statement that relates to this Plan, and as approved by the Court pursuant to section 1125 of the Bankruptcy Code, as such Disclosure

3

Statement may be amended, modified, or supplemented (and all exhibits and schedules annexed thereto or referred to therein).

1.17    "Disputed Claim" means any Claim designated as disputed, contingent or unliquidated in the Debtor's Schedules filed in connection with the Chapter 11 case of the Debtor, or any claim against which an objection to the allowance thereof has been, or will be, interposed, and as to which no Final Order has been entered.

1.18    "Distribution" means the distribution of Cash or other property, as the case may be, in accordance with this Plan.

1.19    "Distribution Address" means the address for a holder of an Allowed Claim as set forth in a proof of claim, as amended or supplemented. If no proof of claim is filed with respect to a particular Claim, such defined term means the address as set forth in the Debtor's Schedules.

1.20    "Effective Date" means the fifteenth day following the Confirmation Date, and in the event that such date is not a Business Day, the next day thereafter.

1.21    "Entity" means and entity as defined in section 101(15) of the Bankruptcy Code.

1.22    "Equity Interest" means an equity security, within the meaning of section 101(16) of the Bankruptcy Code, in the Debtor.

1.23    "Final Order" means an order of judgment of the Court, as entered on the docket of the Court, that has not been reversed, stayed, modified, or amended, and as to which (a) the time to appeal, seek review or rehearing or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending, or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the possibility that a motion under Section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil

4

Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedures in cases before the Court, may be filed with respect to such order shall not cause such order not to be a Final Order.

1.24    "Holder" means the legal or Beneficial Holder of a Claim or Interest (and, when used in conjunction with a Class or type of Claim or Interest, means a Holder of a Claim or Interest in such Class or of such type).

1.25    "Impaired" means an Allowed Claim that is impaired within the meaning of section 1124 of the Code.

1.26    "Person" means person as defined in section 101(41) of the Bankruptcy Code.

1.27    "Petition Date" means May 1, 2018, which is the date the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida.

1.28    "Plan" means this plan in its entirety, together with all addenda, exhibits, schedules, and other attachments hereto, in its present form or as it may be modified, amended or supplemented from time to time.

1.29    "Priority Claim" means a Claim entitled to priority under section 507(a)(3)-(7) of the Bankruptcy Code.

1.30    "Priority Tax Claim" means a Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.31    "Professional" means a professional employed in the Debtor's Chapter 11 Case under 11 U.S.C. §§ 327 and/or 1103 by the Debtor.

1.32    "Professional Fee Claim" means a Claim for compensation or reimbursement of expenses of a Professional retained in the Debtor's case in accordance with the provisions of

5

Section 327 and 328 of the Bankruptcy Code.

1.33    "Rejection Claim" means a Claim arising under section 502(g) of the Bankruptcy Code from the rejection under section 365 of the Bankruptcy Code, or under this Plan, of an executory contract or unexpired lease of the Debtor that has not been assumed.

1.34    "Reorganized Debtor" means the Debtor, House of Floors of Palm Beach, Inc., post-confirmation.

1.35    "Schedules" means the schedules and any amended schedules of assets and liabilities filed or which may be filed by the Debtor with the Court in this case.

1.36    "Secured Claim" means a Claim that is (a) secured by a valid and perfected lien on property in which the Debtor's Estate has an interest, but only to the extent of the value of the Claimant's interest in the Estate's interest in such property as determined pursuant to Section 506(a) of the Bankruptcy Code or (b) subject to setoff under section 553 of the Bankruptcy Code, but only to the extent of the amount subject to setoff, as determined pursuant to section 553 of the Bankruptcy Code.

1.37    "United States Trustee" means the Assistant United States Trustee for the Southern District of Florida.

1.38    "Unsecured Claim" means any Claim that is not (a) an Administrative Claim, (b) a Priority Claim; (c) a Priority Tax Claim; or (d) a Secured Claim.

**B.**    __Rules of Interpretation and Construction__.  For purposes of the Plan, (i) any reference in the Plan to an existing document or exhibit filed or to be filed means that document or exhibit as it may have been or may be amended, modified, or supplemented; (ii) unless otherwise specified, all references in the Plan to sections, articles, and exhibits are references to sections, articles, or exhibits to the Plan; (iii) the words "herein," "hereof," "hereto," "hereunder," and other

6

words of similar import refer to the Plan in its entirety and not to any particular portion of the Plan; (iv) captions and headings contained in the Plan are inserted for convenience and reference only, and are not intended to be part of or to affect the interpretation of the Plan; (v) wherever appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; and (vi) the rules of construction outlined in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply to the Plan.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1    **Classification**. Pursuant to Section 1122 of the Bankruptcy Code, a Claim or Equity Interest is placed in a particular Class for purposes of voting on the Plan and receiving Distributions under the Plan only to the extent the particular Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class and such Claim or Equity Interest has not been paid, released, or otherwise settled before the Effective Date. A Claim or Equity Interest shall be classified in a different Class to the extent that it qualifies within the identification of that different Class.

2.2    **Unclassified Claims**. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Unsecured Non-Tax Claims, Priority Tax Claims and U.S. Trustee Fees, and the treatment of those Claims, is set forth in Article 3.

2.3    **Identification of Classes**. Classes of Claims against and Equity Interests in the Debtor are designated as follows:

**Class 1**.        Allowed Secured Claim of U.S. Bank, N.A., d/b/a U.S. Bank Equipment

7

Finance.

**Class 2**.        Allowed Secured Claim of BankUnited, FSB.

**Class 3.**        Allowed Secured Claims of Shaw Industries, Inc.

**Class 4.**        Allowed Secured Claims of Mohawk Factoring, LLC.

**Class 5.**        Allowed Secured Claim of J.P. Morgan Chase Bank, N.A.

**Class 6.**        Allowed Priority Wage Claims of Adam Myers and Brian Quigley.

**Class 7**.        Allowed Unsecured Claims against the Debtor.

**Class 8.**        Allowed Equity Interest Holders.

### ARTICLE III

### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
### U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

**3.1**    **Administrative Claims Bar Date**. All requests for payment of Administrative Claims and applications for payment of Professional Fee Claims shall be filed with the Bankruptcy Court and served upon the Debtor at least ten (10) days before the Confirmation Hearing or by such earlier deadline as may apply to such Administrative Claim pursuant to an order of the Bankruptcy Court.  Administrative Claims that have already been filed or approved by the Court need not be refiled.  Except as provided herein, any Administrative Claim or Professional Fee Claim for which an application or request for payment is not filed within such time period shall be discharged and forever barred.

**3.2**    **Treatment of Administrative Claims, including Professional Fee Claims**. The Holders of Allowed Administrative Claims against the Estate (with the exception of the Professionals, including those employed pursuant to Sections 327, 328 or 1103 of the Code or Persons who seek payment pursuant to Sections 503(b)(3) and (4) of the Code, who will be paid 100% of the amount allowed of such Administrative Claims by the Debtor's estate upon

8

application to the Bankruptcy Court prior to the applicable deadline for filing such applications and entry of an order(s) thereon) shall be paid 100% of their Allowed Administrative Claims in Cash, unless otherwise ordered by the Bankruptcy Court, upon the earlier to occur of:  (i) the later of the Effective Date or the date of a Final Order allowing such Administrative Claim; (ii) for Allowed Administrative Claims that represent liabilities incurred by the Debtor in the ordinary course of business after the Petition Date with regard to the Debtor, the date on which each such Claim becomes due in the ordinary course of such Debtor's business and in accordance with the terms and conditions of any agreement relating thereto; or (iii) upon such other dates and terms as may be agreed upon by the Holder of any such Allowed Administrative Claim and the Debtor.

   **3.3**  <u>**Treatment of Priority Unsecured Non-Tax Claims.**</u> Subject to the allowance procedures and deadlines provided herein, on the Effective Date or as soon thereafter as is practicable after the later of the: (i) Effective Date, (ii) the date on which such Priority Unsecured Non-Tax Claim becomes an Allowed Priority Unsecured Non-Tax Claim, or (iii) a date agreed upon by the Debtor and the holder of such Allowed Priority Unsecured Non-Tax Claim, the Allowed Priority Unsecured Non-Tax Claimant, other than Allowed Priority Unsecured Non-Tax Claims of Shaw Industries Group, Inc., Adam Myers and Brian Quigley, shall be paid in full in Cash in an amount equal to its Allowed Priority Unsecured Non-Tax Claim.  Any Allowed Priority Unsecured Priority Non-Tax Claim of Shaw Industries Group, Inc. shall be paid in Class 3.  Any Allowed Priority Unsecured Priority Non-Tax Claim of Adam Myers and Brian Quigley shall be paid in Class 7.

   **3.4**  <u>**Treatment of Priority Tax Claims**</u>. Subject to the allowance procedures and deadlines provided herein, on the Effective Date or as soon thereafter as is practicable after the later of the: (i) Effective Date, (ii) the date on which such Priority Tax Claim becomes an Allowed

9

Priority Tax Claim, or (iii) a date agreed upon by the Debtor and the holder of such Allowed Priority Tax Claim, the Holder of an Allowed Priority Tax Claim shall be paid in full in Cash in an amount equal to its Allowed Priority Tax Claim.

    3.5    **Treatment of U. S. Trustee Fees**. Notwithstanding any other provisions of the Plan to the contrary, the United States Trustee shall be paid in Cash the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), within ten (10) days of the entry of the Order confirming the Plan ("U.S. Trustee Fees"), for pre-confirmation periods by the Debtor, and the Debtor shall simultaneously provide the United States Trustee an appropriate affidavit indicating the cash disbursements for the relevant period. In addition, the U.S. Trustee Fees for post-confirmation periods up to and including the date on which the Effective Date occurs shall be paid in Cash by the Debtor, and the Debtor shall timely provide the United States Trustee with an appropriate affidavit indicating the cash disbursements for the relevant period(s). Lastly, the Reorganized Debtor shall timely pay the U.S. Trustee Fees in Cash for all subsequent post-confirmation periods based upon all post-confirmation disbursements made by the Reorganized Debtor, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an order by the Bankruptcy Court dismissing this Case or converting this Case to another Chapter under the Bankruptcy Code, and Reorganized Debtor shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating all the cash disbursements for the relevant period.

**ARTICLE IV**

**TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN**

    4.1    **Class 1 –Allowed Secured Claim of U.S. Bank, N.A., d/b/a U.S. Bank Equipment Finance ("U.S. Bank").** The Allowed Secured Claim of U.S. Bank in the amount of

$31,900.00, based on certain equipment finance agreements entered into by the Debtor shall be satisfied by continued payments by the Debtor in accordance with the documents evidencing the Claim. The Claimant shall retain all liens and security interests until such time as the Claim is paid in full.

     **4.2**     <u>**Class 2 – Allowed Secured Claim of BankUnited, FSB**</u>. The Allowed Secured Claim of BankUnited, FSB. ("**BankUnited**") is based on amounts due under a Commercial Loan Agreement and perfected through the filing of a UCC-1 Financing Statement. BankUnited's Class 2 Allowed Claim shall be satisfied by monthly payments from the Effective Date and continuing for sixty months based on a thirty year amortization at the interest rate currently in effect under the loan documents evidencing the Claim. At the end of the five year period, the monthly payments will continue for an additional two years based on a ten year amortization at the interest rate currently in effect under the loan documents evidencing the Claim. At the end of the two year period, the loan will be balloon and be due and payable. The Claimant shall retain all liens and security interests until such time as the Claim is paid in full.

     **4.3**     <u>**Class 3 – Allowed Secured Claims of Shaw Industries, Inc**</u>. The Allowed Secured Claim of Shaw Industries Inc. ("**Shaw**"), based on amounts due under a Purchase Money Security Agreement on inventory and receivable, perfected through the filing of UCC-1 Financing Statement, and subject to the Court's *Order Authorizing Payment of Critical Vendor Shaw Industries Group, Inc.* [ECF No. 34] and shall include any Priority Non-Tax Claim of Shaw. Commencing on the Effective Date and for thirteen months thereafter, the Claimant will receive monthly payments of $10,000. For the next six months, the Claimant will receive monthly payments of $12,500. Thereafter, the Claimant will receive monthly payments of $15,000 until such time as the Claim has been paid in full. The Claimant shall retain all liens and security interest

11

until such time as the Claim has been paid in full.

      **4.4**     **Class 4 – Allowed Claims of Mohawk Factoring, LLC.**  The Allowed Claims of Mohawk Factoring, LLC ("**Mohawk**") is based on amounts due under a Promissory Note.  After Shaw, the Claimant is the largest supplier of product to the Debtor and the Debtor requires a continued supply of product from the Claimant.  The Debtor will make payments of $450 per week to the Claimant until the Claim has been paid in full.

      **4.5**     **Class 5 – Allowed Secured Claims of J.P. Morgan Chase Bank, N.A.**  The Allowed Secured Claim of J.P. Morgan Chase Bank, N.A. ("**J.P. Morgan**") is based on amounts due under a purchase money mortgage automobile loan secured against a 2014 Toyota Tacoma, VIN# 5TFNX4CN6EX040310.   J.P. Morgan's Class 5 Allowed Claim shall be satisfied by receiving it's continued monthly payment due under the loan agreement.  The Claimant shall retain all liens and security interests until the Claim has been paid in full.

      **4.6**     **Class 6 – Allowed Priority Wage Claims of Adam Myers and Brian Quigley.** The Allowed Priority Wage Claim of Adam Myers and Brian Quigley are based on the scheduled amounts due to the Claimants of $21,646.93 and $15,643.36, respectively.  The Claimants will receive equal monthly payments commencing on the Effective Date for a two year period until such time as the Claims have been paid in full.

      **4.7**     **Class 7 -Allowed General Unsecured Claims**.  Each Allowed Unsecured Claim against the Debtor's Estate shall be satisfied by Distributions to the Holder of each such Allowed Unsecured Claim on a *pro rata* basis with the Holders of all Allowed Unsecured Claims in this Class 7 on a quarterly basis from a $4,000 per quarter payment made by the Debtor.  The Distributions to the Holders of Allowed Unsecured Claims hereunder shall commence on the Effective and be paid quarterly for three years thereafter.

12

    **4.8**    <u>**Class 8 – Allowed Equity Interests in the Debtor**</u>. The Holders of Allowed Equity Interests in the Debtor shall retain their Interests.

    **4.9**    <u>**Impairment**</u>.  Classes 2, 3, 4, 6, 7 and 8 are Impaired under this Plan. The Impaired class will be treated as fully set forth in Article IV above. However, such designation is subject to revision upon resolution of objections to Claims or Interests.

**ARTICLE V**

<u>**ALLOWANCE AND DISALLOWANCE OF CLAIMS**</u>

    **5.1**    <u>**Objections to Claims and Equity Interests**</u>.  Subject to further order of the Bankruptcy Court, the Debtor may file objections to Claims and Equity Interests when and as required by Rule 3007-1(B) of the Local Rules for the United States Bankruptcy Court for the Southern District of Florida or as provided by order of the Bankruptcy Court.  The Debtor shall have the authority to file, settle, compromise, withdraw, arbitrate or litigate to judgment objections to Claims and Equity Interests pursuant to applicable procedures established by the Bankruptcy Code, the Bankruptcy Rules and this Plan.  The failure of any such party to object to any Claim or Equity Interest for voting purposes shall not be deemed a waiver of such party's right to object to, or re-examine, any such Claim or Equity Interest in whole or in part.

    To the extent that an objection to a Claim or Equity Interest is filed and remains unresolved as of the Effective Date, Distributions on such Disputed Claim or Disputed Equity Interest shall not be made unless and until a Final Order is entered allowing such Disputed Claim or Disputed Equity Interest or portion thereof.  The Debtor shall account for all Disputed Claims and Disputed Equity Interests at such time as a Distribution is made under this Plan through the Disputed Claims/Equity Interests Fund.

    **5.2**    <u>**Delay of Distribution on a Disputed Claim or Disputed Equity Interest**</u>. No

13

distribution will be made on account of a Disputed Claim or Disputed Equity Interest unless such Disputed Claim or Disputed Equity Interest is Allowed by a Final Order.

**5.3** **Establishment of Disputed Claims/Equity Interests Fund**.  On the Effective Date of the Plan, or as soon thereafter as possible, the Debtor shall establish the Disputed Claims/Equity Interests Fund.  The Debtor shall be responsible for making the Distributions to the Holders of Allowed Claims and Allowed Equity Interests pursuant to the terms of the Plan, and to maintain the fund for the payment of Disputed Claims.

## ARTICLE VI

## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Executory Contracts entered into by the Debtor prior to the Petition Date, shall be treated as follows:

**6.1** **Assumption and Rejection**. All executory contracts and unexpired leases of the Debtor not expressly assumed herein or assumed prior to the Confirmation Date or are not as of the Confirmation Date the subject of a pending application to assume, shall be deemed to be rejected.

**6.2** **Rejection Claims**. The Confirmation Order shall constitute an Order of the Bankruptcy Court approving all such rejections hereunder as of the Effective Date.  Any Claim for damages arising from any such rejection, which Claim is not otherwise already resolved through a settlement between the Debtor and other party to the Executory Contract or other Final Order, must be filed by the earlier of (i) the date set forth in the Confirmation Order or other Final Order of the Bankruptcy Court, or (ii) within 30 days after the mailing of notice of the entry of the Confirmation Order or such Claim shall be forever barred, shall not be enforceable against the Debtor, the Debtor's Estate, or any of the Assets of the Debtor's Estate, and shall receive no

14

Distribution under this Plan or otherwise on account of such Claim. All Allowed Rejection Claims shall be treated in Class 6.

## ARTICLE VII

## MEANS FOR IMPLEMENTATION OF THE PLAN

**7.1**    **Funding of Plan**. The Debtor will fund the Plan from Available Cash and operating income, unless otherwise stated.

**7.2**    **Vesting of Property of the Estate**. On and as of the Effective Date, pursuant to section 1141(b) and (c) of the Bankruptcy Code, all Property of the Estate, as defined in section 541 of the Bankruptcy Code, shall vest in the Reorganized Debtor, free and clear of all claims and interests of Creditors and Equity Interest Holders.

## ARTICLE VIII

## CONDITIONS PRECEDENT TO EFFECTIVENESS OF PLAN

8**.1** **Conditions to the Effective Date**. The Plan shall not become effective and the Effective Date shall not occur unless and until:

8.1.1 The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably satisfactory to the Debtor;

8.1.2 The Bankruptcy Court shall have approved the information contained in the Disclosure Statement as adequate pursuant to section 1125 of the Bankruptcy Code;

8.1.3 All documents, instruments and agreements, in form and substance reasonably satisfactory to the Debtor, provided for under this Plan or necessary to implement this Plan, shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby; and

8.1.4 The Confirmation Order shall have become a Final Order.

## ARTICLE IX

## EFFECT OF CONFIRMATION

**9.1**     **Binding Effect**. The Plan shall be binding upon and inure to the benefit of the Debtor, all present and former holders of Claims and Equity Interests, and their respective successors and assigns.

**9.2**     **Compromise and Settlement**. Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class with due regard to any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, sections 510(b) and (c) of the Bankruptcy Code, or otherwise. As of the Effective Date, any and all such rights described in the preceding sentence are settled and compromised pursuant to the Plan. The Confirmation Order will constitute the Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtor, its Estate and all holders of Claims, (2) fair, equitable and reasonable, (3) made in good faith, and (4) approved by the Court pursuant to Bankruptcy Rule 9019.

**9.3**     **Discharge of Debtor**. Confirmation of the Plan will discharge all Claims against the Debtor.  No holder of any Claim or Equity Interest may, on account of such Claim or Equity Interest, seek or receive any payment or other Distribution from, or seek recourse against the Estate, and/or its successors, assigns and/or property, except as expressly provided in the Plan.

**10.4**     **Final Decree as to Debtor**. Upon substantial consummation of the Plan, the

16

Debtor, or such other party as the Court shall designate in the Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

**10.6     Injunction. The Confirmation Order shall provide, among other things, that all entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor are, with respect to any such Claims or Equity Interests, permanently, enjoined from and after the Confirmation Date from taking any of the following actions (other than actions to enforce any rights or obligations under the Plan): (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor or any of its property; (ii) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any encumbrance of any kind against the Debtor; (iii) asserting any right of setoff, directly or indirectly, against any obligation due the Debtor, or any of its property, except as contemplated or allowed by the Plan; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; provided, however, that the injunction provided herein above shall neither bar any entity from asserting any defense in an action commenced by or on behalf of any of the Debtor, nor prohibit any entity from asserting any right expressly preserved or contemplated by the Plan.**

**The Confirmation Order shall also provide, among other things, that all entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor are permanently enjoined from and after the Confirmation Date from (i) commencing,**

conducting, or continuing in any manner, directly or indirectly, any action or other proceeding of any kind with respect to any such Claim or Equity Interest against the Debtor; (ii) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor on account of any such Claim or Equity Interest; and (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance or lien of any kind against the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Equity Interest; **provided, however**, that nothing contained in the Plan shall preclude the IRS from pursuing an action against any entity, or any governmental entity from pursuing a criminal action against any entity, **provided, further**, that nothing in the Plan shall constitute a waiver of any rights or defenses of such persons with respect to such actions.

By accepting Distributions pursuant to the Plan, each holder of an Allowed Claim or Equity Interest shall be deemed to have specifically consented to the Injunctions set forth herein.

**9.8     Terms of Injunctions or Stays**. Unless otherwise provided in the Plan or an Order of the Court, all injunctions or stays provided for in this Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Case is closed.

### ARTICLE X

### CRAM DOWN AND MODIFICATION

**10.1     Utilization of Cramdown.** If all of the applicable provisions of 11 U.S.C. §1129(a) other than paragraph (8), are found to have been met with respect to the Plan, the Debtor may seek

18

confirmation pursuant to 11 U.S.C. §1129(b).  For the purposes of seeking confirmation under the cramdown provisions of the Code, should that alternative means of confirmation prove to be necessary, Debtor reserves the right to modify or vary the treatment of the claims of the rejecting Classes so as to comply with Section 1129(b) of the Code.

10.2    **Modification of Plan.**  The Debtor may propose amendments to or modifications of this Plan at any time prior to confirmation with the leave of the Bankruptcy Court upon notice to parties entitled to receive the same.  After confirmation, the Debtor may, with the approval of the Bankruptcy Court, and so long as it does not materially adversely affect the interests of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Order of Confirmation, in such a manner as is necessary to carry out the purposes and effect of this Plan.

The Plan may be modified at any time after the Confirmation Date but before the completion of payments under the plan, whether or not the plan has been substantially consummated, upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, to (a) increase or reduce the amount of payments on claims of a particular class provided for by the plan; (b) extend or reduce the time period for such payments; or (c) alter the amount of the Distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of such claim made other than under the Plan.

**ARTICLE XI**

**RETENTION OF JURISDICTION**

11.1    Notwithstanding the entry of the Confirmation Order, and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction of all matters arising out of, arising

in or related to, the Chapter 11 Case to the fullest extent permitted by applicable law, including,

without limitation, jurisdiction to:

(a)　determine all controversies and disputes arising under or in connection with the Plan and the Debtor's Estate.

(b)　allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest (whether filed before or after the Effective Date and whether or not contingent, disputed or unliquidated), including the compromise, settlement and resolution of any request for payment of any Administrative Claim or Priority Claim, the resolution of any objections to the allowance or priority of Claims or Equity Interests and the resolution of any dispute as to the treatment necessary to reinstate a Claim or Equity Interest pursuant to this Plan, and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any objection to such Claim or Equity Interest (to the extent permitted under applicable law);

(c)　grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for services provided on or before the Effective Date, and after the Effective Date;

(d)　hear and determine motions, applications, adversary proceedings, contested matters and other litigated matters pending on, filed or commenced after the Effective Date;

(e)　determine and resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which any of the Debtor is a party or with respect to which the Debtor or the Debtor's Estate may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(f)　ensure that all payments due under this Plan and performance of the provisions of this Plan are accomplished as provided herein, and resolve any issues relating to Distributions to Holders of Allowed Claims and/or Allowed Equity Interests pursuant to the provisions of this Plan;

(g)　construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with Section 1142 of the Bankruptcy Code, as may be necessary for the enforcement, implementation, execution and consummation of this Plan;

(h)　determine and resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or

20

enforcement of this Plan (and all Exhibits to this Plan) or the Confirmation Order, including the indemnification and injunction provisions set forth in and contemplated by this Plan or the Confirmation Order, or any Person's rights arising under or obligations incurred in connection therewith;

(i)    consider any modification of the Plan under Section 1127 of the Bankruptcy Code;

(j)    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of this Plan or the Confirmation Order;

(k)    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(l)    determine any other matters that may arise in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in this Plan;

(m)    hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code;

(n)    continue to enforce the automatic stay through the date of the final Distribution hereunder;

(o)    hear and determine: (i) disputes arising in connection with the interpretation, implementation or enforcement of this Plan and the Confirmation Order; or (ii) issues presented or arising under this Plan and Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with this Plan or the Confirmation Order, or mentioned in the Plan;

(p)    shorten or extend, for cause, the time fixed for performance of any act or thing under this Plan or the Confirmation Order, on notice or *ex parte*, as the Bankruptcy Court shall determine to be appropriate;

(q)    adjudicate any settlements pursuant to Bankruptcy Rule 9019, if required under this Plan or the Confirmation Order and all other matters contained herein;

(r)    enter a Final Decree closing the Chapter 11 Case or converting the case to a Chapter 7 case; and

(s)    enter any orders necessary to effectuate the Confirmation Order and the Plan.

21

# ARTICLE XII

## MISCELLANEOUS

**12.1**  **Allowed and Disallowed Claims**. Notwithstanding any other provisions of the Plan, any claim which is scheduled as disputed, contingent, or unliquidated or which is objected to in whole or in part on or before the date for Distribution, shall not be paid in accordance with the provisions of the Plan until such claim has become an allowed claim by a Final Order. If allowed, the claim shall be paid on the same terms as if there had been no dispute.

**12.2**  **Headings**. Headings are utilized in this Plan for the convenience of reference only and shall not constitute a part of this Plan for any other purpose.

**12.3**   **Defects, Omissions and Amendments**. This Plan may be altered, amended, or modified by the Debtor before or after the Confirmation Date as provided in Section 1127 of the Bankruptcy Code and as set forth herein and in the Disclosure Statement.

**12.4**  **Governing Law**. Except to the extent that the Bankruptcy Code or Florida Corporate Law is applicable, all rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida.

**12.5**  **Severability**. Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan.

**12.6**  **Regulatory Approval.** No regulatory approval is necessary for the confirmation of this Plan.

**12.7**  **Revocation of the Plan**. The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan, or if Confirmation does not occur or if the Plan does not become effective, then the Plan shall be null

22

and void, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor; (b) constitute an admission of any fact or legal conclusion by the Debtor or any other Entity; or (c) prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor.

**12.8    No Admissions**. If Confirmation or the Effective Date does not occur, nothing contained in the Plan or Disclosure Statement shall be deemed as an admission by the Debtor with respect to any matter set forth herein or therein including, without limitation, liability on any Claim or the propriety of any Claims classification.

**12.9    Successors and Assigns**. The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, successor or assign of such Entity.

**12.10    Exemption from Certain Transfer Taxes**. Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security or the making or delivery of any instrument of transfer under this Plan may not be taxed under any law imposing a stamp tax, use tax, sales tax or similar tax. Any sale of any Asset occurring after or upon the Effective Date shall be deemed to be in furtherance of this Plan.

**12.11    Defenses with Respect to Unimpaired Claims**. Except as otherwise provided in this Plan, nothing shall affect the rights and legal and equitable defenses of the Debtor with respect to any Unimpaired Claim, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

**12.12    Entire Agreement**. This Plan sets forth the entire agreement and undertaking relating to the subject matter hereof and supersedes all prior discussions and documents. The Estate shall not be bound by any terms, conditions, definitions, warranties, understandings, or

representations with respect to the subject matter hereof, other than as expressly provided for herein.

     **12.13 <u>Notices</u>**. Any notice required or permitted to be provided under this Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

                    **If to Debtor:**

                    Donald Brodsky, President
House of Floors of Palm Beach, Inc.
P.O. Box 810095
Boca Raton, FL 33481

                    cc:

                    Robert C. Furr, Esq.
Furr Cohen
2255 Glades Road, Suite 301E
Boca Raton, Florida 33431
Tel 561.395.0500
Fax 561.338.7532
rfurr@furrcohen.com

                    and

                    Alvin S. Goldstein, Esq.
Furr Cohen
2255 Glades Road, Suite 301E
Boca Raton, Florida 33431
Tel 561.395.0500
Fax 561.338.7532
agoldstein@furrcohen.com

          [REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

This Plan is respectfully submitted:

HOUSE OF FLOORS OF PALM BEACH, INC.

BY: _____
        DONALD BRODSKY, PRESIDENT

FURR COHEN
*Attorneys for the Debtor*
2255 Glades Road, Suite 301E
Boca Raton, FL 33431
561-395-0500
561-338-7532 fax

By: /s/ *Robert C. Furr*
        Robert C. Furr, Esq.
        Florida Bar No. 210854
        rfurr@furrcohen.com

1